# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

ROSA L. RICHARDSON,              )
                                 )
          Plaintiff,              )
v.                               )   Case No. CIV-17-017-SPS
                                 )
COMMISSIONER of the Social       )
Security Administration,         )
                                 )
          Defendant.              )

## OPINION AND ORDER

The claimant Rosa L. Richardson requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations

implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: 1) whether the decision was supported by substantial evidence, and 2) whether the correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term "substantial evidence" requires "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in

---

[1] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was thirty-seven years old at the time of the administrative hearing (Tr. 35, 136). She completed the twelfth grade, and has worked as a cashier and cook (Tr. 29, 174). The claimant alleges she has been unable to work since April 1, 2012, due to depression, hip problems including two hip replacements, lower back problems, bipolar disorder, and mental problems (Tr. 174).

## Procedural History

On April 25, 2013, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her application was denied. ALJ J. Dell Gordon held an administrative hearing and determined the claimant was not disabled in a written decision dated June 25, 2015 (Tr. 22-30). The Appeals Council denied review, so the ALJ's written decision represents the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a narrowed range of sedentary work as defined in 20 C.F.R. § 416.967(a), *i. e.*, she could lift/carry ten pounds occasionally, sit six hours in an eight-hour workday, and stand/walk any combination not to exceed four hours in an eight-hour workday, and she could occasionally reach or finger. Additionally, he found that she could do simple and some complex tasks, could relate to

others on a superficial work basis, and could adapt to a routine work situation (Tr. 26). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled because there was work she could perform, *i. e.*, security systems monitor, information clerk, and call out operator (Tr. 29-30).

**Review**

The claimant contends that the ALJ erred by: (i) failing to properly consider her obesity, and (ii) failing to properly assess her credibility. The Court finds these contentions unpersuasive for the following reasons.

The ALJ determined that the claimant had the severe impairments of status post bilateral hip replacement, degenerative disc disease of the cervical and lumbar spines, lumbar spondylosis, depression, and anxiety (Tr. 24). The relevant medical evidence reveals that the claimant is four feet eleven inches tall, and that her weight has ranged from 161 to 188 pounds (Tr. 268-272, 298, 429, 433, 528, 543, 600, 611, 625). The claimant underwent replacement of both hips in 2010 and 2011 (Tr. 468, 492).

On September 11, 2013, the claimant underwent an MRI of the cervical spine, which revealed large disc osteophyte complexes at C5-6 and C6-7 causing mild central canal stenosis and causing distortion of the anterior cord with questionable minimal myomalacic change at C5-6 but no evidence of acute cord compression and no more than mild neural foraminal narrowing at any one level, although evaluation was difficult due to body habitus (Tr. 318). On January 8, 2014, the claimant underwent an MRI of the lumbar spine, which revealed disc desiccation at L1-L2, L2-L3, and L3-L4 with multilevel disc bulges causing no significant central canal stenosis and no more than mild narrowing of the neural

foramina at any one level (Tr. 316). There were no findings to support her right lower extremity symptoms (Tr. 316).

She received primary medical treatment at Central Oklahoma Family Medical Center, where she largely received treatment for low back pain, neck pain, and depression (Tr. 518-522). In response to the MRI of her cervical spine, the assessment plan directed her to follow up as needed and take medication as directed, and that she should apply heat to the area two or three times per day (Tr. 529). The claimant was told she would benefit from physical therapy, was asked to get into a water aerobics program, and told to continue her treatment regimen (Tr. 438). Additionally, she was recommended for epidural steroid injections (Tr. 560). The claimant did continue to report hip pain and low back pain, but was able to heel/toe walk and had 5/5 strength bilaterally (Tr. 300, 311, 337 600). In 2015, treatment notes reflected normal gait and station (Tr. 649, 659).

On February 18, 2014, the claimant was diagnosed with bilateral carpal tunnel, mild on the left and mild to moderate on the right (Tr. 594). She was informed that she may be cured by splinting, which was the best place to start before considering surgery (Tr. 594). She later reported that it was aggravated by texting on her cell phone, but that she had no tingling or numbness when using the splints (Tr. 614). She was noted to have failed conservative treatment on April 8, 2015 (Tr. 661).

As to her mental impairments, the claimant was treated at Mental Health Services of Southern Oklahoma, and assessed with bipolar I disorder, single manic episode severe, without mention of psychotic behavior (Tr. 259). The treatment notes also indicate her history of hip replacement and back pain, but that she was otherwise healthy (Tr. 259).

Notes from Central Oklahoma Family Medical Center also reflect her depression, with findings of, *inter alia*, depressed mood and weight gain (Tr. 646).

In his written opinion, the ALJ summarized the claimant's allegations related to her impairments, as well as the medical evidence in the record. In particular, the ALJ noted the claimant's bilateral hip replacement that resulted in a decreased range of motion in the lumbar spine in all planes, and the MRIs of the cervical and lumbar spine which revealed mild to moderate impairments, as well as continued complaints of and treatment for low back pain (Tr. 27). The ALJ gave limited weight to the opinions of the state reviewing physicians with regard to the claimant's physical impairments, finding that she was more limited than originally thought, and assigned great weight to the state reviewing physician opinions as to her mental impairments (Tr. 28). He then stated that it was reasonable to conclude that her hip and back pain limited her ability to stand, walk, and lift, and that her recently-diagnosed carpal tunnel had only required limited conservative treatment. As to her mental impairments, he found that she received medication treatment but had not sought or received counseling (Tr. 28).

The claimant first contends that the ALJ erred in failing to consider her obesity because she had a BMI over 35.0 all but two times her weight was recorded. Social Security Ruling 02-1p states that the effects of obesity must be considered throughout the sequential evaluation process. *See* 2002 WL 34686281, at *1 (Sept. 12, 2002). The Listing of Impairments with regard to the respiratory system references obesity and explains that "[t]he combined effects of obesity with respiratory impairments can be greater than the effects of each of the impairments considered separately"; therefore, the ALJ "must

consider any additional and cumulative effects of obesity" when assessing an individual's RFC. 20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 3.00 Respiratory System. However, "[o]besity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment." Soc. Sec. Rul. 02-1p, 2002 WL 34686281, at *6. Therefore, "[a]ssumptions about the severity or functional effects of obesity combined with other impairments [will not be made]," and "[w]e will evaluate each case based on the information in the case record." *Id.*, 2002 WL 34686281, at *6. Here, the record reflects that the claimant's weight ranged from 150 to 188 pounds and she is four feet eleven inches tall (Tr. 268-272, 561, 607). The claimant argues that the ALJ failed to properly account for her obesity, but the ALJ thoroughly discussed the claimant's physical and mental impairments and the reasons for his RFC determination, there was no additional evidence or opinion in the case record as to her obesity, and he was not required to speculate about whether the claimant's obesity exacerbated the claimant's other impairments. *See Fagan v. Astrue*, 231 Fed. Appx. 835, 837-838 (10th Cir. 2007) ("The ALJ discussed the evidence and why he found Ms. Fagan not disabled at step three, and, the claimant—upon whom the burden rests at step three—has failed to do more than suggest that the ALJ should have speculated about the impact her obesity may have on her other impairments.").

The claimant next contends that the ALJ erred in analyzing her credibility in relation to her pain. Under the applicable standard at the time of the ALJ's decision, a credibility determination would be entitled to deference unless there is some indication that the ALJ misread the medical evidence as a whole. *Casias v. Secretary of Health & Human Services*,

933 F.2d 799, 801 (10th Cir. 1991). An ALJ could disregard a claimant's subjective complaints of pain if unsupported by any clinical findings. *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987). But the ALJ's credibility findings were required to be "closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) [citation omitted]. A credibility determination "must contain 'specific reasons' for a credibility finding; the ALJ may not simply 'recite the factors that are described in the regulations.'" *Hardman v. Barnhart*, 362 F.3d 676, 678 (10th Cir. 2004), *quoting* Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *4 (July 2, 1996). In this case, the Court finds that the ALJ set out the appropriate credibility factors, and cited evidence supporting his reasons for finding that the claimant's subjective complaints were not believable to the extent alleged, *i. e.*, the ALJ gave clear and specific reasons that were specifically linked to the evidence in the record. Specifically, he noted found that the claimant recovered well from her hip replacements, and she has had relatively conservative treatment for low back pain and cervical pain, but that these impairments nevertheless limited her ability to stand, walk, and lift, *which he then reflected in her RFC assessment*, also accounting for her recently-diagnosed carpal tunnel syndrome and noting her conservative mental health treatment.

The Court recognizes that "[p]ain, even if not disabling, is still a nonexertional impairment to be taken into consideration, unless there is substantial evidence for the ALJ to find that the claimant's pain is insignificant." *Thompson v. Sullivan*, 987 F.2d 1482, 1490-1491 (10th Cir. 1993)*, citing Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989) *and Gossett v. Bowen*, 862 F.2d 802, 807-808 (10th Cir. 1988). But here there is no indication

that the ALJ misread the claimant's medical evidence taken as a whole. The ALJ noted the treatment the claimant received as well as the results achieved with that treatment, her allegations of pain did not appear to be reflected in the treatment record, and there were no reports of severe pain by the claimant. As such, the ALJ's determination here is entitled to deference and the Court finds no error in analyzing the claimant's credibility.[2]

The ALJ specifically noted the medical record available in this case, *and still concluded* that she could work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard*, 379 F.3d at 949. The claimant's contentions are therefore without merit.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence. The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

---

[2] The undersigned Magistrate Judge notes that the Social Security Administration eliminated the term "credibility" in Soc. Sec. Rul. 16-3p, 2016 WL 1119029 (Mar. 16, 2016), and has provided new guidance for evaluating statements pertaining to intensity, persistence, and limiting effects of symptoms in disability claims. The undersigned Magistrate Judge finds that even under the new standard, the ALJ properly evaluated the claimant's credibility.

**DATED** this 24th day of September, 2018.

_____
**STEVEN P. SHREDER
UNITED STATES MAGISTRATE JUDGE**